No. 36,201

VIRGINIA McALPINE, *Appellee* and *Cross-appellant*, v. GEORGIA B. JENKINS and WAYNE P. JENKINS, *Appellants*.

(156 P. 2d 855)

Opinion filed March 10, 1945.

*Louis R. Gates* and *N. E. Snyder,* both of Kansas City, argued the cause, and *Frank H. Thompson,* of Kansas City, was on the briefs for the appellants.

*Elmer E. Martin,* of Kansas City, argued the cause, and *Edward H. Powers,* of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action to set aside a deed to lots 6, 7 8, 9, 10 and 12 in McAlpine Place, an addition to Kansas City, upon the ground of fraudulent representations and concealment which induced its execution. The trial court, with painstaking care, made exhaustive findings of fact and conclusions of law and rendered judgment for plaintiff. Defendants have appealed.

The principal facts are not seriously controverted. Plaintiff is the widow of Robert L. McAlpine, to whom she was married in 1913, and who died in 1932, intestate, leaving plaintiff as his sole heir at law. She had lived in Kansas City prior to and during her marriage and until 1935, when she moved to Chicago and obtained employment as a clerk in a department store, which was continued until the time of the trial. She has a sister, Hilda Fitzhugh, who is employed in Kansas City, Mo., where she lives, and whom plaintiff has visited for a week or two twice a year since she has been in Chicago. Plaintiff's husband was a member of a pioneer family in Wyandotte county, was well known in the community, had held public office in the county, and at one time was possessed of large realty holdings. Upon his death his wife was appointed administratrix of his estate and filed a verified inventory in which she stated that she knew of no real estate of which her husband died seized except an interest in the public levee. Plaintiff had had no skill or training in regard to records of real estate titles.

The defendant, Wayne P. Jenkins, about 58 years of age at the time of the trial, was born in Kansas City and has lived there all his life. His father was in the real estate business in Kansas City and he worked with his father in that business as a boy. He conducted a real estate business of his own from 1911 until 1926. Since 1936, without maintaining an office, he engaged in what he termed "buying real estate for myself and promotion work," taking real estate titles in the name of his wife, Georgia B. Jenkins, his codefendant. From the time he started work in his father's office until the time of the trial he had engaged in the practice of searching the records of real estate titles for the purpose of ascertaining the status of such titles, to ascertain the owners thereof and liens thereon,

and circulated petitions to promote the paving of streets, and on occasions had solicited from owners options on property sought to be condemned by municipalities, such solicitations being made prior to the initiation of condemnation proceedings. He was familiar with the legal method of transferring titles on account of nonpayment of taxes, and fully understood the distinction between a tax deed issued by the county clerk and a deed as the result of a judicial tax sale. He occupied a position in relation to the subject matter of this suit greatly superior to that of the plaintiff. At the time of the transaction complained of neither the plaintiff nor her sister was personally acquainted with him.

On October 31, 1940, the board of commissioners of Kansas City passed and, on November 1, 1940, published an ordinance providing for the "widening of Park Drive (State Highway K-32) from the west line of city park to the west city limits," and directing the city engineer to make a survey and a description of the land necessary to be taken for that purpose. The city engineer made such a survey and report, which was verified and filed with the city clerk on November 5, 1940, and which report was submitted to and approved by the board of city commissioners on the same date. This report disclosed that it was necessary to take and acquire lots 5, 7, 8 and 9 in McAlpine Place in Kansas City. Later the city commissioners passed an ordinance, which was duly published, condemning those lots for the purpose of opening and widening Park Drive (Highway K-32), and on January 6, 1941, upon the petition of the city, the district court appointed commissioners to fix the damages for the condemnation of the above described lots. The commissioners so appointed duly published notice to the owners that they would meet and fix the damages on January 27, 1941. They met on that date and assessed the damages on account of taking the property as follows: $625 for lot 5, $1,000 for lot 7, $600 for lot 8, and $600 for lot 9. They filed their report and findings with the city clerk, which report was duly approved by the city commissioners.

On December 1, 1925, Jesse S. McAlpine deeded to her brother, Robert L. McAlpine, plaintiff's husband, all of lots 6, 7, 8, 9, 10 and 12 in McAlpine Addition to Kansas City. In July, 1929, in a tax suit brought by the county commissioners in the district court of Wyandotte county, lots 6, 7, 8, 9 and 10 were sold at judicial tax sale. At that sale plaintiff's husband, Robert L. McAlpine, purchased lots 7, 8 and 10. Lot 6 was sold to Bayless Steele and lot 9

was sold to Joseph Dahlin. At a similar judicial tax sale in 1930 lot 12 was sold to J. Littick. At the time of the condemnation proceedings above mentioned the record legal title to lots 7, 8 and 10 was vested in plaintiff. Pending this action, by appropriate proceedings, the city was directed to and did pay to the clerk of the court the amount of the award in the condemnation proceedings for lots 7 and 8, out of which the court directed the payment of taxes then due, leaving a balance of $1,371.01 remaining in the hands of the clerk, of the condemnation award.

We copy pertinent findings of the court as follows:

"4. Prior to November 12, 1940, but in the month of November, the defendant Jenkins contacted the witness, Hilda Fitzhugh, sister of plaintiff, by telephone where she was employed; and on the evening of the same day met her in the lobby of the Continental ·Hotel in Kansas City, Missouri. At that time, said defendant, Wayne P. Jenkins, offered to compensate Miss Fitzhugh for assisting him in obtaining a deed from plaintiff to lots in McAlpine Place. At that time and place, said defendant, Wayne P. Jenkins, stated to Miss Fitzhugh, in substance, that he had been running the records in reference to property in McAlpine Place; that the deceased husband of plaintiff had owned some lots there but had paid no taxes on them and that they had been sold at judicial tax sale; that Jenkins knew about straightening out titles, frequently bought up quit claim deeds; that he could compromise the taxes on the lots for a small sum and would pay plaintiff $25 for a quit claim deed to the lots he was referring to; that they were of little or no value and were in a ravine; that he might be able to get them in shape so that he could make a little money out of them but not much, and that the unpaid taxes against them were more than they were worth. Jenkins also stated to Hilda Fitzhugh that he knew and was a friend of plaintiff's father and of her deceased husband, and was trying to help plaintiff realize a little something out of the lots. Jenkins then further requested Hilda Fitzhugh to write plaintiff in Chicago and communicate to her the statements which Jenkins had made to Miss Fitzhugh.

"5. Hilda Fitzhugh did write to plaintiff, her sister, in Chicago, and conveyed to her the information as requested by Jenkins. Wayne P. Jenkins also prepared and transmitted to plaintiff in Chicago a quit claim deed describing Lots 6, 7, 8, 9, 10, and 12, McAlpine Place, naming the defendant, Georgia B. Jenkins, as the grantee and plaintiff as the grantor. This deed was transmitted to plaintiff by letter, dated November 12, 1940, which letter was introduced herein as plaintiff's exhibit 4. [The letter referred to reads: "I am herewith sending a quit-claim deed for your signature before a notary public, for Lots 6, 7, 8, 9, 10, and 12, in McAlpine Place, an addition to Kansas City, Kansas. These lots were deeded to Robert L. McAlpine by his sister Jesse S. McAlpine a good many years ago, but he did not pay the taxes and they were sold at Judicial Tax sale in 1929 and 1930 and no other taxes have been paid since then and there is a large amount of taxes due now. The lots are of very little value being in a

ravine just west of the City Park, but the present taxes can be settled for a small part of the amount, however you do have some interest in the property as the sole heir of Robert L. McAlpine, deceased. I will pay you $25.00 for this deed properly executed if you will return it to The First State Bank of Kansas City, Kansas they will send you the $25.00."] After the deed was sent to plaintiff, the defendant, Wayne P. Jenkins, called Hilda Fitzhugh a number of times and asked her to write or 'phone plaintiff in Chicago and urge her to sign the deed. Plaintiff did sign the deed and did acknowledge it on the 30th day of November, 1940, and about December 13, 1940, transmitted it to a bank in Kansas City, Kansas, as directed by the letter, and did receive $25 therefor. After the deed was sent to the bank by plaintiff, and in the month of December, 1940, plaintiff received a printed copy of the notice of the meeting of the condemnation commissioners in which she was named as one of the property owners. This notice was sent to her by a Mr. Allis in a letter dated January 20, 1941. Plaintiff thereupon promptly tendered to Georgia B. Jenkins $25 and requested that she convey the lots back to plaintiff. Georgia B. Jenkins refused the $25 and refused to reconvey the lots. Plaintiff then commenced this suit on February 4, 1941, and has kept her tender good. After the deed was received by the bank, the defendant, Wayne P. Jenkins, paid to Hilda Fitzhugh $10 for her assistance in obtaining the execution and delivery of the deed.

"6. By the statements made to Hilda Fitzhugh and written direct to plaintiff by Wayne P. Jenkins, he undertook to furnish to the plaintiff information concerning the lots in question, the status of the title, their value, extent, location, amount of taxes due thereon, and their topography. By statements made to Hilda Fitzhugh and communicated to plaintiff, he sought to and did induce a belief that by reason of his friendship for the family and his experience with records, plaintiff could rely upon the statements made.

"7. Plaintiff did rely upon the statements and representations made by Wayne P. Jenkins and did make the deed because thereof, greatly to her damage.

"8. Immediately prior to receiving the letter from her sister and the letter from Wayne P. Jenkins, plaintiff did not know or understand that she had any interest in or title to the lots mentioned in the deed, or any of them.

"9. From the statements made to Hilda Fitzhugh and communicated to plaintiff, and from the letter received by her from Wayne P. Jenkins, plaintiff was induced to believe that she did not own any title to any of the lots described in the deed.

"10. At the time plaintiff signed and delivered the deed in question, she did not know or understand that the description in the deed, referred to other than the ordinary city lot containing from 25 to 50 foot frontage by 120 to 150 feet in depth, but did believe that the deed referred to lots of the size last mentioned. Defendants knew this was not true.

"11. At the time plaintiff signed and delivered the deed in question, plaintiff did not know that a large percent of lots 7 and 8 were above grade and not in a ravine; that the lots contained several acres of ground; that the city had initiated condemnation proceedings to condemn lots 7, 8 and 9; that the record

legal title to lots 7, 8, and 10, was vested in plaintiff; that the taxes against lot 7 were $138.97 and that the taxes against lot 8 were $40.62, which figures were relatively small as compared with the taxes against the other lots; that there was a rock quarry on lots 7 and 8 which had been worked; and that plaintiff had no legal title to any of the lots included in the deed except lots 7, 8, and 10. All of said facts were pertinent to be considered in determining whether or not $25 was a fair consideration for the deed, and all were known to the defendant, Wayne P. Jenkins, at the time he talked to Hilda Fitzhugh and at the time he wrote to the plaintiff. Wayne P. Jenkins did not communicate any of said facts to Hilda Fitzhugh or to the plaintiff.

"12. The statements in plaintiff's exhibit 4 (the letter of Wayne P. Jenkins dated November 12, 1940, inclosing the deed prepared for plaintiff's signature) together with the statements made by Wayne P. Jenkins to Hilda Fitzhugh, which statements he specifically requested Hilda Fitzhugh to communicate to the plaintiff, were ambiguous and misleading and, construed together, gave an entirely false impression and failed to disclose the true facts concerning the only lots to which the plaintiff had any right, title or interest, to wit, lots 7, 8, and 10. Said statements, both oral and written, were made for the purpose of inducing the plaintiff to execute the deed here in question, in reliance thereon.

"13. The defendant, Wayne P. Jenkins, by reason of the relation of the parties, their respective means of knowledge, the subject matter with reference to which they were dealing, and all the other circumstances shown by the evidence in this case, was under a duty to disclose to the plaintiff all material facts known to him and not known to the plaintiff; and this the court finds he did not do.

"14. That under the facts and circumstances as disclosed by the evidence in this case, the plaintiff had the right to rely upon the statements and representations made by Wayne P. Jenkins, and communicated to her by letter and through Hilda Fitzhugh; that she did rely thereon, execute and deliver the deed in question because thereof, to her damage.

"15. That the statements made by Wayne P. Jenkins construed as a whole were false and untrue and constitute a fraud on plaintiff within the law and equity.

"16. That the deed executed and delivered by plaintiff, sued on in this action, is null and void and of no force and effect as a conveyance of land from plaintiff to Georgia B. Jenkins, and should be set aside. . . ."

The court's conclusions of law read:

"I. This case comes within the exception to the general rules of fraud. In this case the parties did not deal upon equal terms. The plaintiff did not possess equal knowledge with the defendant, Wayne P. Jenkins, of the subject matter of the deed, nor did she have access to the property or the records pertaining thereto; and Wayne P. Jenkins did have such knowledge and have such access.

"II. The deed sued upon in this case is void and of no force and effect.

"III. Plaintiff should have and receive the condemnation money now in

.the hands of the clerk of this court, which has been paid by the City of Kansas City, Kansas, as the .condemnation award of Lots 7 and 8, McAlpine Place, without interest. ·

"IV. The title to Lots 7, 8, and 10, McAlpine Place, should be quieted in the plaintiff, Virginia McAlpine, subject to the rights of the City of Kansas City, Kansas, acquired in condemnation proceedings herein described in and to Lots 7 and 8, McAlpine Place."

The court overruled defendants' motions to set aside the findings of fact, for judgment in their favor upon the findings of fact, and for a new trial, and rendered judgment for plaintiff in harmony with its findings of fact and conclusions of law.

Appellants contend their demurrer to plaintiff's evidence should have been sustained and stress the view that there was no evidence of falsity of the statements made in the letter of November 12, 1940, to plaintiff. The point is not well taken. We think the court correctly interpreted this letter and that upon the whole it was designed to and did convey a false impression. We see no necessity of making a further analysis of it than was made by the trial court. Appellants contend there was no evidence to support the allegation of the petition that defendants did not advise plaintiff that certain valuable improvements were about to be made on and in the vicinity of the land which would enhance the value thereof. An improved highway is ordinarily regarded as an improvement which enhances the value of adjoining land. Appellants contend it was error for the court to receive over their objections evidence relating to the condemnation proceedings brought by the city because there was no pleading of condemnation proceedings. We find this pleaded in an amendment and supplement to plaintiff's second amended petition, upon which the case was tried. The court did not admit in evidence the award made by the commissioners in the condemnation proceedings as evidence of the value of the property. The plaintiff produced oral testimony on that question and conflicting evidence was produced by defendants. It was the function of the trial court to weigh that evidence. There is no contention there was not evidence to support the court's conclusions on that point. Appellants argue that the representation made by the defendants to Hilda Fitzhugh for transmission to plaintiff was improperly received over their objections for the reason that it had not been pleaded. Plaintiff had pleaded that the false representations relied upon were made both in writing and orally. It was not incumbent

upon the plaintiff to name the witnesses plaintiff expected to use in support of the allegation that oral false representations were made. Appellants argue that the findings are not supported by the evidence and that they are inconsistent with each other. We find no substantial merit to either of these contentions. The points above mentioned, or some of them, are reargued in support of defendants' motion for judgment and their motion for a new trial. This reargument presents nothing that has not been previously considered.

Upon the whole, this was largely a fact case, and the pertinent facts upon which the judgment was based are not seriously controverted. We think the record disclosed no material error in the trial and that a just result was reached.

In plaintiff's amendment and supplement to her second amended petition, filed February 10, 1943, she asked for interest upon the condemnation money which had been paid into court. The trial court denied plaintiff's recovery of any interest, and from that ruling plaintiff has taken a cross-appeal. The trial court's view was that this recovery was based upon the false representations made in November, 1940, and that it was barred by the two-year statute of limitations. We think that reason was good. But more than that, this was not an action for damages; it was a suit in equity to set aside a deed.

The judgment of the court below is affirmed both upon the appeal and the cross-appeal.